Argued November 20, 1978, affirmed in part;
reversed in part and remanded for new trial on the
issue of damages for loss of use March 19, reconsideration
denied April 16, petition for review denied June 6, 1979

# GRAF, *Appellant,*
### *v.*
# DON RASMUSSEN COMPANY, *Respondent.*
## (No. 424-151, CA 9935)

592 P2d 250

[312]

[312-a]

Ferris F. Boothe, Portland, argued the cause and filed the briefs for appellant.

Michael A. Lehner, Portland, argued the cause for respondent. With him on the brief were Wm. H. Mitchell and Hershiser, Mitchell, Mowery & Davis, Portland.

Before Schwab, Chief Judge, and Lee, Richardson and Joseph, Judges.

RICHARDSON, J.

**RICHARDSON, J.**

This appeal involves an action for damages resulting from the theft of and subsequent injury to plaintiff's automobile while it was in storage in defendant's garage. Alleging that defendant was negligent in its supervision of her vehicle, plaintiff sought to recover the cost of repair, compensation for loss of use of the vehicle, and damages for the intentional infliction of emotional distress. The trial court struck the latter claim for damages and refused to submit the claim for loss of use. The jury returned a verdict for the full amount of plaintiff's prayer for cost of repair. Plaintiff appeals the striking of her cause for emotional distress, the refusal to submit to the jury the issue of compensation for loss of use and the denial of her motion to examine certain of defendant's sales records. Defendant moved for dismissal of the appeal.

On June 17, 1975, plaintiff delivered her 1972 Mercedes Benz 280 SE automobile to defendant for minor repair and storage while she was in Europe. The vehicle was stolen from defendant's storage area and was later found wrecked. Defendant wrote to plaintiff, explained what had happened, and informed her that the repairs would probably be completed prior to her return. Plaintiff instructed defendant not to repair the car until she returned. In January, 1977, about 16 months after her return to Portland, plaintiff selected an automobile shop to repair her vehicle. The repairs were completed July 11, 1977, at a cost of $8,364.68.

Plaintiff filed notice of appeal on January 3, 1978. Defendant did not cross-appeal. On March 8, 1978, plaintiff demanded and received payment of the judgment for cost of repair. Plaintiff filed a partial satisfaction of judgment excepting those issues which were on appeal. Defendant then moved to dismiss the appeal on the basis that plaintiff waived her right to appeal by accepting payment of her judgment. The motion was denied with leave to renew in defendant's brief.

[313]

*On the Motion to Dismiss.*

■ It is the general rule that a party may waive the right to appeal by acquiescing in the order below or claiming the benefits of the judgment. *Pac. Gen. Contrs. v. State Const. Co.,* 196 Or 608, 611, 251 P2d 454 (1952); *West et al. v. Broadwell et al.,* 124 Or 652, 653, 265 P 783 (1928); *State of Oregon v. Wells, Fargo & Co.,* 64 Or 421, 425, 126 P 611, 130 P 983 (1913). However, an appeal may be maintained when it is not inconsistent with acceptance of the judgment. *Schlecht v. Bliss,* 271 Or 304, 309, 532 P2d 1 (1975). If the provisions of the judgment are divisible and the appeal does not place those portions of the judgment accepted by appellant in jeopardy, the appeal may continue. *Schlecht, supra; Vaughan et ux v. Wilson et al,* 203 Or 243, 246, 273 P2d 991, 279 P2d 521 (1955).

The test for divisibility was set out in *Pac. Gen. Contrs. v. State Const. Co., supra:*

"* * * 'When the provisions of a judgment are so closely connected and mutually dependent, that a reversal as to one would render necessary the reversal of the others, then a party cannot take the benefit of some of such provisions and still retain the right to appeal.' * * *" 196 Or at 612.

■ In examining the relief sought it is clear that a reversal of the trial judge's order striking the cause of action for mental distress, or of withdrawing the loss of use portion of her first cause of action from the jury, would not necessitate a reversal of the award for repair costs. In this instance plaintiff claimed to have suffered two types of injuries from the damage to her vehicle and a third type arising from defendant's subsequent acts. The first was for damage to the chattel itself, and for this plaintiff was awarded her costs of repair. A second claimed injury was to her personal right to the use of the motor vehicle and the inconvenience suffered when it was out of commission. The third claim of injury was emotional distress resulting from actions of the defendant during settlement negotiations. Subject to proof, plaintiff is

[314]

entitled to compensation from the negligent party for injuries to the chattel and for loss of its use. *See Goff v. Elde,* 132 Or 689, 693, 288 P 212 (1930); Annot., 18' ALR3d 497 (1968); 15 Blashfield, Automobile Law and Practice 29-35, § 480.7 (3rd ed 1969); D. Dobbs, Remedies 383-90, § 5.11 (1973); Restatement of Torts § 928(b) (1939). Defendant did not cross-appeal thus we are not in a position to render plaintiff a less favorable judgment than has been granted. *See Gas-Ice Corporation v. Newbern,* 263 Or 227, 234-35, 501 P2d 1288, 56 ALR3d 1078 (1972); *Schlecht, supra.* There is also no risk of a less favorable judgment to plaintiff if we were to grant a new trial on the issue of mental distress or lost use, for plaintiff's right to the cost of repairs is now incontrovertible, as is the issue of defendant's negligence. The right to satisfy the money judgment for the cost of repair is entirely consistent with an appeal from an order dismissing the compensation for mental distress and from the order withdrawing from the jury's consideration the issue of compensation for lost use. Defendant's motion is therefore denied.

*On the Merits.*

Plaintiff's first assignment is that the trial judge erred in withdrawing the issue of lost use from the jury. At the close of all evidence, defendant moved to strike that portion of the complaint on the ground of insufficient evidence and the trial court granted the motion. Plaintiff moved for reconsideration and defendant resisted in three particulars, one of which was that the plaintiff had not proven that the period of time claimed for lost use was reasonable. In the complaint plaintiff prayed for compensation for loss of use from October 1, 1975, to June 30, 1977.

During the time from October 1, 1975, to January 13, 1977, the damaged vehicle was stored in one of defendant's garages. On the latter date the vehicle was taken to a repair shop for estimates and on February 22, 1977, the plaintiff authorized repairs to begin. The repaired vehicle was released to plaintiff on July 11, 1977. Plaintiff prayed for $6,300 damages. There are

[315]

two distinct periods of loss of use. The first is that period of time from her return until she authorized repairs and the second is the length of time taken to complete them.

■ Subject to proof, plaintiff is entitled to recover damages to compensate her for the reasonable time the use of her vehicle was lost. However, the owner of a damaged chattel is not permitted recovery for damages which might reasonably have been avoided. Accordingly, plaintiff is not entitled to compensation for loss of use during a period of unexcused or excessive delay in commencing the repairs. Plaintiff has failed to adequately support her prayer for lost use from October 1, 1975, to February 22, 1977. As was stated in *Williams v. International Co.,* 172 Or 270, 141 P2d 837 (1943):

> "* * * [T]he plaintiff may not recover damages for the loss of use of her truck for an indefinite period of time, but will be limited to the period within which she could have repaired the vehicle had she acted promptly and within a reasonable time. * * *" 172 Or at 286.

There is no evidence that plaintiff made any attempt to secure prompt repair while the vehicle was stored in defendant's garage, nor any explanation for the delay in authorizing repairs. Plaintiff had access to it and knew it was not being repaired. In response to the question: "OK, and had you chosen, you could have had the car repaired anytime you wanted if you chose to take that course of action; isn't that true?" She replied: "I suppose so, yes."[1] The trial court properly withdrew from the jury's consideration the initial period of lost use.

■ There was, however, sufficient evidence of the reasonable period of time necessary to actually repair

---

[1] In an offer of proof plaintiff presented evidence that the parties were engaged in negotiating for repair of plaintiff's vehicle. Plaintiff claimed defendant's intransigence in the negotiation was the cause of the delay in repair of the vehicle. The evidence was rejected; the ruling is not assigned as error.

the vehicle to go to the jury. The reasonableness for the time in effecting repairs may depend on the circumstances involved. In this case the vehicle sustained considerable damage and the owner of the repair shop testified to the repairs which were undertaken and how long the job took. The time actually spent on repair is some evidence of the time necessary to accomplish it. There was also testimony of the uncontrollable delay in securing parts, some of which had to be ordered and others of which had to be custom made when the original was unavailable, which could be considered in ascertaining the reasonableness of the time taken. *See Voitier v. Farrelly,* 320 So 2d 581, 585 (La App 1975). It was error to withdraw this issue from the jury's consideration.

■ Once the appropriate period that plaintiff has lost the use of her vehicle has been established, there remains the problem of the measure of plaintiff's damages. Plaintiff did not introduce evidence that she purchased or rented a substitute vehicle. Defendant argued, and the trial court agreed, that where the plaintiff did not show out of pocket expenses, as a matter of law she was not entitled to recover loss of use. That was error. Plaintiff supported her claim through the introduction of testimony of a person who for 23 years had been engaged in the business of leasing automobiles and other equipment. He stated that for a nonpurchase lease, under which the lessee was free to terminate at any time, his regular charge would be three percent of the value of the vehicle per month.

■ The majority of jurisdictions hold that it is not necessary that plaintiff actually incur expense in acquiring a substitute in order to recover damages for loss of use caused by the negligence of defendant. Although the rental expense would be material in ascertaining the fair measure of plaintiff's damage, it does not determine the entitlement thereto. The owner has suffered compensable inconvenience and deprivation of the right to possess and use her chattel whether

[317]

or not a substitute was obtained. *See, e.g., Chriss v. Manchester Insurance & Indemnity Co.*, 308 So 2d 803 (La App 1975); *Holmes v. Raffo*, 60 Wash 2d 421, 374 P2d 536 (1962); Annot., 18 ALR3d 497, 528-32 (1968); 15 Blashfield, Automobile Law and Practice 32, § 480.7 (3rd ed 1969); D. Dobbs, Remedies 387-89, § 5.11 (1973).

Defendant further argues that plaintiff made no showing that the automobile lessor's charges were customary or reasonable. The determination of the reasonableness of the rental figures is a matter for the jury. From the evidence presented, the jury would not have been left to speculation.

Plaintiff also assigns as error the trial court's denial of her discovery motion, which requested the production of all defendant's documents relating to the sales of 1972 model 280 SE Mercedes Benz automobiles from January, 1975, to August, 1976.[2] Defendant is in the business of sales and service of Mercedes Benz automobiles and is the only dealership between Tacoma, Washington and Springfield, Oregon. The information plaintiff sought to discover would facilitate the proof of the value of her vehicle, as derived from the sales by defendant of similiar models, and would be relevant to determining the lease cost under the formula provided by her expert. The motion was sufficiently tailored to the issues at trial, and defendant has not shown that production of the requested documents would be onerous or pose any undue hardship. On remand discovery should be granted. ORS 41.616.

Finally, plaintiff argues that the trial court erroneously struck from her fourth amended complaint the cause of action for emotional distress. The complaint was captioned "Action at Law for Negligence and for

---

[2] Plaintiff initially moved for discovery of these records from January, 1973, to August, 1976. That motion was denied. Plaintiff then filed a second motion narrowing the dates from January, 1975, to August, 1976. It, too, was denied. This latter motion is narrower in scope and is tailored to the period of time material to the issues presented on remand.

Intentional Causing of Emotional Distress." Plaintiff's first cause of action was based on an allegation that defendant was negligent in storing plaintiff's vehicle in an unguarded lot with the keys in the ignition, and the theft and subsequent damage to the automobile was proximately caused by this negligence. Paragraph IV of the first cause of action alleged:

"Thereafter, defendant notified plaintiff that said vehicle had been stolen and represented that there was no damage to vital parts of said automobile and that it would probably be repaired before her return home. Defendant, without just cause or excuse, then refused to repair said automobile unless plaintiff signed a complete release releasing defendant from liability,

"1) Before said repairs were completed, and

"2) Before possession of said vehicle would be delivered to plaintiff.

"Defendant refused to allow plaintiff thirty days, or any reasonable time, to determine whether in fact the vehicle was properly repaired. Thereafter, defendant claimed and represented to plaintiff that the said Mercedes Benz automobile was not repairable and that it would not be repaired and that she must accept $8,000.00 in full and complete settlement of any claim she might have. Upon plaintiff's refusal to accept said sum, defendant thereafter refused to repair said vehicle."

Plaintiff did not claim damages for emotional disturbance in her prayer respecting the first cause of action.

In her second cause of action plaintiff realleged all the paragraphs of the first cause of action and then alleged:

"Plaintiff is and was a widow in her 60's and is of a sensitive and emotional nature, all of which was or should have been known to defendant and to its agents. By reason of the plaintiff's sensitivity and the wrongful and unjustified conduct of defendant, as aforesaid, plaintiff has sustained severe emotional disturbance and anxiety, all to her further damage in the sum of $15,000."

[319]

Defendant moved to strike paragraph IV of the first cause of action quoted above as frivolous and irrelevant and moved against plaintiff's second cause, for emotional distress, for failure to state a legally cognizable claim.[3] The court granted defendant's motion. The plaintiff then filed a fifth amended complaint containing only the first cause of action in negligence, seeking damages for repair of the car and loss of its use. The issue is whether the fourth amended complaint stated a cause of action for intentional causing of emotional distress.

The cases allowing recovery of damages for emotional distress, where there has been no physical injury to plaintiff, are of two types. The first involves the situation where a defendant's tortious act was the direct and proximate cause of plaintiff's emotional disturbance, as exemplified by *Edwards v. Talent Irrigation District,* 280 Or 307, 570 P2d 1169 (1977). In that case the defendant's negligence in allowing water to flood plaintiff's property resulted in emotional distress and anguish to plaintiffs when they observed their property being damaged. This was simply one of the injuries resulting from defendant's negligence.

The tort of infliction of emotional distress is a second example. The Supreme Court in *Pakos v. Clark,* 253 Or 113, 453 P2d 682 (1969), characterized this cause of action as the tort of outrageous conduct. The test used in that case was quoted from Restatement (Second) Torts § 46 (1965):

---

[3] Paragraph VI of defendant's motion against plaintiff's fourth amended complaint reads as follows:

"VI

"Striking plaintiff's second cause of action in its entirety upon the ground that said cause of action is sham, frivolous and irrelevant and fails to state a cause of action. In addition, the court ruled in its order dated May 27, 1976, that allegations pertaining to negotiations of settlement and mental suffering should be stricken from the complaint."

This is essentially a demurrer, ORS 16.260(6), rather than a motion to strike, ORS 16.100, but for purposes of this appeal we will treat the motion as a demurrer.

> "(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress * * *."

*Rockhill v. Pollard,* 259 Or 54, 485 P2d 28 (1971), is an example of recovery under this theory. In that case plaintiff was involved in an automobile accident. She was slightly injured but her ten year old daughter was rendered unconscious and appeared lifeless. Plaintiff immediately took her daughter to defendant, a doctor, for emergency treatment. The defendant gave plaintiff and her daughter a perfunctory examination and told them they were not injured and needed no medical treatment. He finally turned them out on the street in subzero temperature to wait for transportation. The court concluded a jury could find defendant's conduct was outrageous and the cause of plaintiff's severe emotional distress. The court noted that plaintiff was not claiming damages for medical malpractice but alleged that defendant, by his behavior, intentionally or recklessly caused her emotional distress. The test set out by the court to determine defendant's liability for emotional distress was whether the defendant's conduct was outrageous in the extreme.

■ In this case we do not interpret plaintiff's complaint as seeking damages for emotional distress under the first theory set out above, *i.e.*, that as a direct and proximate result of defendant's negligent storage of the automobile, plaintiff was emotionally disturbed. Rather plaintiff's fourth amended complaint alleged "By reason of the plaintiff's sensitivity and the wrongful and unjustified conduct of defendant, as aforesaid, plaintiff has sustained severe emotional disturbance and anxiety * * *." The "wrongful and unjustified conduct" referred to in the complaint was the activity of defendant during what can be characterized as negotiations for settlement of plaintiff's claim for damage to her automobile. As pleaded in her complaint (Paragraph IV, set out above), plaintiff's dis-

[321]

tress did not arise from defendant's negligence in leaving the automobile vulnerable to theft.

In order to meet the criteria for a cause of action for intentional infliction of emotional distress, as set out in *Rockhill v. Pollard, supra,* the complaint must allege facts that, if proven, would show defendant's conduct was outrageous in the extreme. In *Melton v. Allen,* 282 Or 731, 580 P2d 1019 (1978), the Supreme Court discussed the criteria for redress for mental disturbance as follows:

> "* * * But in each instance in which we have allowed redress for mental disturbance without accompanying physical injury, it has been a case involving intentional acts of a flagrant character under most unusual facts and circumstances which added to the weight of the plaintiff's claim, and each was clearly a serious invasion of the plaintiff's right and not feigned. [Cite omitted.] The cases in which we have so departed have been those of outrageous conduct, invasion of the right of privacy, or some special circumstances of considerable magnitude." (Footnote omitted.) 282 Or at 736.

We conclude the allegations in plaintiff's fourth amended complaint do not allege conduct which would support a cause of action for mental suffering. The court did not err in striking that cause of action.

In summary we hold plaintiff's motion for discovery should have been allowed for the purposes of establishing a value of the vehicle in support of a claim for loss of its use. The claim for loss of use of the vehicle for the period from February 22, 1977, until the car was repaired should have been submitted to the jury. On remand plaintiff is entitled to retrial only on the issue of damages for loss of use for this period.

Affirmed in part; reversed in part and remanded for new trial on the issue of damages for loss of use.

**SCHWAB, C. J.,** dissenting in part.

The majority holds that the trial court erred in failing to submit plaintiff's loss-of-use claim to the

[322]

jury. I would affirm, because under the law, as I understand it to be, the evidence produced by the plaintiff was not sufficient to make a jury question on this issue.

The owner of the repair shop which repaired the automobile testified to the repairs which were undertaken and how long they took. There was no testimony by him or anyone else as to that this was a reasonable time. An individual in the vehicle rental business testified what his regular charge was. Neither he nor anyone else testified that this charge was reasonable or customary in the trade. It may be that evidence of this kind from an individual in the business about which he is testifying should be sufficient to make a *prima facie* case. It may be that to require him to speak such words as "in my judgment these charges are reasonable," is to elevate form over substance. Whether or not that be so, I read Oregon law as holding evidence of reasonableness is necessary. In *Mathews v. City of La Grande,* 136 Or 426, 430, 299 P 999 (1931) the court said:

> " 'The rule is that a plaintiff in a case, involving personal injuries can recover, as a part of his damages, his reasonable expenses for medicines and medical treatment, *but there must be some evidence that the charges are reasonable': Tuohy v. Columbia Steel Co.,* 61 Or 527 (122 P. 36)." (Emphasis supplied.)

In *Scott v. Elliott,* 253 Or 168, 182, 451 P2d 474 (1969), the court said, "The measure of damages for temporary loss of use of the property is the *fair* rental value of the property." (Emphasis supplied.)

For the foregoing reasons I respectfully dissent.